Schettini et al., Appellants, *v.* Registrar of San Germán, Respondent.

Appeal from a Decision of the Registrar of Property Refusing to Record Partial Cancelation of Submortgage.

No. 556.—Decided January 23, 1923.

Record of Title—Mortgage—Submortgage—Negotiable Instrument—Cancelation.—To secure a negotiable instrument payable to bearer A mortgaged, among other properties, a mortgage in his favor on a certain property which he afterwards purchased, and, thereupon, as he still held the unendorsed instrument, he totally canceled the mortgage which had become extinguished by confusion of rights and canceled in part, or as to the amount of the submortgage, the mortgage created to secure the negotiable instrument. Record of the partial cancelation having been refused, it was *held:* That as the amount secured by the submortgage had been paid, the submortgage should be canceled totally and the mortgage securing the negotiable instru-

ment partially, nullifying the said instrument as was done by the notary, that is, by adding a footnote to the deed stating that the submortgage had been canceled and affixing also his signature and seal to the instrument and thereafter returning it to the interested party.

The facts are stated in the opinion.

*Mr. B. Forés* for the appellants.

The respondent did not appear.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

The appellant in this case, with the consent of her husband, canceled a certain submortgage which, together with other mortgaged properties, secured an obligation payable to bearer.

The deed of cancelation was presented in the registry and the registrar refused to record it in the following decision:

"Record of the partial cancelation of the submortgage referred to in the preceding document—deed No. 259 executed in this city on November 20, 1922, before notary Benito Forés Morazo—is denied for the following reason: Because the method adopted therein by the interested persons for the purpose of making such cancelation is incompatible with the provisions of article 82 of the Mortgage Law, which does not authorize the partial cancelation of mortgages created to secure negotiable instruments, but only their total cancelation, and different rules can not be adopted at the will of the interested persons for effecting the cancelation of that class of obligations. A cautionary notice has been entered for 120 days in favor of Matilde Schettini in lieu of the cancelation asked for, at page 171 of volume 21 of Maricao, property No. 861, entry letter A. . Article 82 of the Mortgage Law; Decisions of the General Directorate of Registries of September 30, 1890, February 3, 1898, and November 9, 1908. San Germán, November 29, 1922."

Not agreeing with that decision, the appellant took the present appeal and prays for a reversal.

It appears that Matilde Schettini y Gastambide, the appellant, availing herself of the right conferred by the Act of March 7, 1912, amending articles 153 of the Mortgage

Law and 132 of the Regulations governing its execution, created a mortgage on several properties and real rights to secure a single obligation payable to bearer, without specifying the name of the creditor, but executing it to the order of the person to whom the obligation might be transferred or endorsed. Among the said real rights was a mortgage which had been created on a certain rural property by Juan Benvenuti y Olivari in favor of Matilde Schettini to secure $950 as principal and $50 for costs. The submortgage was recorded in the registry. Mortgagor Benvenuti sold the mortgaged property to the appellant and although the mortgage was extinguished by the merger of the rights of mortgagee and owner, it could not be canceled because the mortgage had been submortgaged together with other properties to secure the obligation payable to bearer to which we have referred. Matilde Shettini, who still held the unendorsed obligation, totally canceled the submortgage on the said mortgage and exhibited the obligation stamped by the notary with a note stating that it had been canceled.

Subdivision 4 of article 82 of the Mortgage Law cited by the registrar reads as follows:

"Records made to procure sums represented by negotiable paper shall be canceled upon presentation of an instrument executed by the persons who may have collected the credits which must show that the negotiable paper was canceled at the time of its execution, or of a petition signed by said interested persons and by the debtor to which are attached the negotiable paper referred to, duly perforated. * * * "

The paragraph quoted prescribes the rules to be followed for the cancelation of records made by virtue of negotiable instruments, but this provision of the law does not determine whether such cancelation can be made totally or partially. This matter has been provided for in preceding statutes. Article 78 reads as follows:

"Art. 78.—The cancelation of records and cautionary notices may be total or partial."

And as a consequence article 80 provides as follows:

"Art. 80.—Partial cancelation may be requested and must, in a proper case, be ordered:

"1.—When the real property the subject of the record or cautionary notice becomes reduced.

"2.—When the recorded right is reduced in favor of the owner of the encumbered estate."

In direct relation and as a complement to subdivision 2 of article 80, article 135 of the Regulations reads as follows:

"Art. 135.—The right recorded in favor of the owners of the estate encumbered shall be considered reduced for the purposes of subdivision 2 of said article 80.

"Second. When the amount of the right recorded is diminished as a natural effect of the contract which gave rise to the record, as occurs when a mortgagor pays a part of his debt, making it a matter of record in due form, * * * ."

As may be deduced from the statutes transcribed, the Mortgage Law authorizes in general terms partial cancelations when the right recorded is reduced in favor of the owner of the property and we find no prohibition against the application of those statutes to a mortgage created to secure negotiable instruments or obligations payable to bearer. Article 80 should be construed in harmony with article 82; therefore, the formalities to be complied with and prescribed by the last article for the cancelation of such obligations or negotiable instruments should not be con founded with the substantive provision of the first which allows their total or partial cancelation.

A difficulty might have arisen in the case of several mortgagees, only some of whom consented to the partial cancelation of a mortgage created on several properties and

stating the amount which each secured.  Galindo and Esco-
sura say that the question would be to determine whether
it would be proper to cancel the mortgage on some prop-
erties whose liabilities had been satisfied by the mortgagor,
or whether the cancelation should be made only by reduc-
ing the amount of the mortgage.  They settle the question
as follows:

> "We favor the latter view, because each and all of the properties
> were mortgaged in favor of each and all of the mortgagees, and as
> long as there is one of them who does not give his consent, his right
> continues over all of the properties, but only for the amount due
> to him.
>
> "The doctrine of the decision of February 5, 1878, is, in our
> opinion, applicable not only to the particular case thereby decided,
> but also to that of the partial extinction of a mortgage created to
> secure negotiable instruments or obligations payable to bearer, if
> payment of some of them is established in the manner prescribed by
> article 82 of the Mortgage Law."  Galindo, Mortgage Law, volume
> 3, p. 17.

From this commentary it follows clearly that when there
is a single mortgagee and the mortgage covers several prop-
erties, the mortgage may be canceled in so far as it affects
the properties freed by the payment of the amounts with
which they were charged.  Consequently, in this case of
partial cancelation there can arise none of the doubts that
might exist if there were more than one mortgagee.  This
is a case of a single mortgagee and the mortgage was
created on another mortgage and on other properties to
secure the amount of the negotiable instrument, fixing the
amount with which each of these properties was charged.
Under such circumstances, and the amount secured by the
submortgage having been paid, the submortgage should be
canceled totally and the mortgage securing the negotiable
instrument partially, nullifying the said instrument, as was
done by the notary according to the deed, that is, by stamp-
ing upon it a note stating that the submortgage had been

canceled and affixing thereto also his signature and seal, returning it to the interested party. In this manner, and inasmuch as a single negotiable instrument is secured by the mortgage, the rights of third persons are protected, for on acquiring the negotiable instrument they would have notice of the partial cancelation made by any endorser.

For all of the foregoing the decision must be

*Reversed.*

Chief Justice Del Toro and Justices Wolf, Aldrey and Hutchison concurred.